IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Stellar Records, LLC, a Wisconsin limited liability company,<br><br>                    v.            Plaintiff,<br><br>William J. Urbanowski, Jr.,<br><br>                                Defendant. | Case No.<br><br>PLAINTIFF'S COMPLAINT FOR COPYRIGHT INFRINGEMENT<br><br>Jury Trial Demanded |

NOW COMES the Plaintiff, Stellar Records, LLC, by its attorney, Michael T. Hopkins, and as and for a cause of action against the Defendant, William J. Urbanowski, Jr., alleges and shows to the Court as follows:

**I. Jurisdiction and Venue**

1. This claim is brought pursuant to 17 U.S.C. §501 *et. seq.* (hereinafter referred to as the U.S. Copyright Act).

2. Subject matter jurisdiction is vested in this Court pursuant to 28 U.S.C. §§1331 and 1338, as this claim arises under the laws of the United States; i.e., the U.S. Copyright Act.

3. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(1) and §1400(a), as the Defendant resides in this District.

**II. The Parties**

4. The Plaintiff, Stellar Records, LLC (hereinafter "Stellar), is a Wisconsin limited liability company with its principal offices located in Milwaukee, Wisconsin.

5. The Defendant, William J. Urbanowski, Jr., is an adult individual residing in Southbridge Massachusetts.

### III. Facts

6. Karaoke is a form of interactive entertainment in which amateur singers sing along with recorded music. The music is typically a well-known popular song minus the lead vocal. Song lyrics are usually displayed on a video screen, along with a moving symbol or changing color to guide the singer.

7. KJs (Karaoke Jockeys) acquire collections of karaoke recordings of various musical genres and the audio and video equipment required to play/display karaoke formatted songs. The equipment is usually compact and portable so that the KJ can provide karaoke services at a variety of venues, such as bars, restaurants, parties and weddings, and is usually compensated on a per appearance basis. Obviously, the larger the collection of karaoke songs on a KJ's play list, the greater the number of musical tastes which can be satisfied, and the more popular a KJ will be.

8. Plaintiff, Stellar Records, LLC (hereinafter "Stellar") has acquired all right title and interest to the copyrights of approximately 950 music sound recordings originally produced, under license, by Stellar Records, Inc. (hereinafter "SRI"), as hereinafter described.

9. In 1995, SRI began producing and selling musical and sound-a-like recordings used in karaoke performances. SRI entered into voluntary and compulsory license agreements with the copyright owners of popular, newly released songs for the right to produce these new derivative works.

10. After licensing a particular song, SRI re-recorded the work using house musicians and singers. These sound-a-like recordings were then digitally paired with a graphics element in a single digital file. The graphics element of the digital file contained the applicable trademark for the karaoke product being manufactured, and the words of the song which had been rerecorded. A song's complete digital file (audio plus graphics) was burned to a compact disc in a special format known as CD+G ("compact disc plus graphics"), together with the files of other songs being released as part of the same collection.

11. From 1995 until early 2014, SRI produced monthly collections of various genres (pop, urban, country, etc.) of newly released songs, totaling in excess of 7,000 different CD+G recordings during this nearly twenty year period.

12. Once produced, SRI's CD+G compact discs were then marketed and sold to authorized dealers, KJs and the general public under the "Pop Hits Monthly," "Top Hits Monthly," and "Sing It Now" labels.

13. Pursuant to 17 U.S.C. sec. 401, SRI placed proper copyright notices on the labels of all compact discs it produced which contained its copyright protected recordings.

14. Mark Mann, a/k/a Marc Lossman, a resident of Tucson, Arizona, doing business as "Karaoke King" and "Marc the Mixer," advertises and sells infringing copies of copyright protected karaoke and music sound recordings on various on-line venues, including craigslist®, ebay®, and USFreeads®, which he copies from a master computer drive onto an individual external computer hard drive for delivery to a customer, upon receipt of the customer's paid order.

15. Mann advertises that the hard drives contain no fewer than 250,000 karaoke/music recordings, including newly released and up-to-date "hits."

16. Mann obtains payment from customers for the computer hard drives containing infringing copies of karaoke and music sound recordings via PayPal®.

17. In March 2017 Stellar, through its agent, purchased a hard drive from Mann containing infringing copies of karaoke and music sound recordings, which Stellar thereinafter had forensically analyzed by Setec Investigations, located in Los Angeles, California.

18. The analysis by Setec Investigations revealed that the drive contained no fewer than two hundred sixty four (264) infringing copies of sound recordings for which Stellar owns the copyright.

19. On August 10, 2017 Stellar commenced suit against Mann for copyright infringement in the United States District Court for the District of Arizona, in case no. 4:17-cv-390-RCC.

20. Pursuant to Mann's PayPal® account records subpoenaed by Plaintiff in the litigation against him, the Defendant purchased two computer hard-drives and a laptop computer from Mann on June 27, 2014, December 29, 2014, and June 15, 2016, respectively, each of which contained infringing copies of sound recordings produced by SRI and other similar manufacturers, at a total cost of $795.00.

21. Given the number of illicit sound recordings (no fewer than 250,000 karaoke/music recordings) contained on each of the devices purchased by Defendant from Mann, the retail value of the hard drive and recordings would have exceed $741,000.00 had Defendant purchased lawful copies of said recordings at retail.

22. The Defendant purchased the pirated sound recordings from Mann at a discount from retail of 99.99%, thereby informing any reasonable person that the recordings contained thereon were illegal, pirated copies of said recordings.

23. The hard drive purchased by Defendant from Mann contained no fewer than two hundred sixty four (264) illicit, pirated copies of sound recordings produced by SRI, to which Stellar owns the copyrights.

24. Attached hereto as Exhibit A is a list of two hundred sixty-four (264) sound recordings contained on the hard drive purchased by Defendant from Mann, for which Plaintiff owns the copyright.

25. Exhibit A also indicates the title of the work in which each sound recording was included ("Collection 3" through "Collection 9") when registered with the U.S. Copyright Office, and the Registration Certificate Number issued therefor.

26. Attached hereto as Exhibit B are true and correct copies of the Registration Certificates issued by the U.S. Copyright Office for the sound recordings entitled "Collection 3" through "Collection 9."

27. Mann copied, sold and offered for sale illicit and counterfeit copies of Plaintiff's sound recordings without Plaintiff's permission and without license, either express or implied, to do so.

28. Mann's conduct in copying, selling and offering for sale illicit and counterfeit copies of Plaintiff's sound recordings has been done willfully, and with full knowledge and understanding that his conduct constituted a direct and explicit infringement of Plaintiff's copyrights in said works, in direct violation of the U.S. Copyright Act.

### IV. First Cause of Action - Contributory Copyright Infringement

29. Plaintiff realleges and incorporates as if fully set forth herein, each and every allegation contained in paragraphs 1 through 28, supra.

30. "[O]ne contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007); see also *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009); *In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir., 2003); and *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, Ltd., 545 U.S. 913, 930, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005).

31. To maintain an action for contributory infringement, one does not have to prove "actual knowledge" of direct infringement by the third party, as that phrase may be understood by a lay person, as constructive knowledge of infringement is sufficient to meet this burden. *Arista Records II*, 2006 WL 842883, at *14; see also *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001) (contributory negligence only requires that the secondary infringer "know or have reason to know of direct infringement" (quotation omitted)). "Willful blindness is knowledge" of infringement. *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003).

32. By ordering one or more hard drives from Mann containing infringing copies of karaoke and music sound recordings, Defendant induced Mann to infringe Plaintiff's copyrights in its recordings by burning illegal copies of said recordings to said hard drives, and thereinafter selling and delivering them to Defendant, which Mann did pursuant to Defendant's specific order and request.

33. Defendant has contributorily infringed Stellar's copyright in at least two hundred sixty four (264) distinct works contained on the hard-drive purchased from Mann, to which Plaintiff owns the copyrights, in violation of 17 U.S.C. §§106(1) & (3), and 501(a).

### V. Relief Sought

34. Plaintiff realleges and incorporates as if fully set forth herein, each and every allegation contained in paragraphs 1 through 33, supra.

35. Pursuant to 17 U.S.C. §504(c), Plaintiff is entitled to an award of statutory damages of between $750.00 and $150,000.00 *per work infringed*, for an allowable award of statutory damages between $198,000.00 and $39,600,000.00 for Defendant's willful infringement of Stellar's copyrights, to be determined by a jury.

36. Pursuant to 17 U.S.C. §505, Plaintiff is also entitled to an award of its actual costs and attorney fees incurred in the prosecution of this action.

37. Pursuant to 17 U.S.C §503, Stellar is entitled to the seizure and the destruction of all offending computers, drives, files and related materials and things within Defendant's possession or control, containing infringing copies of Stellar's copyright protected recordings.

**WHEREFORE**, Plaintiff, Stellar Records, LLC, hereby demands that judgment be entered in its favor and against Defendant, William J. Urbanowski, Jr., as follows:

a). For an award of statutory damages for Defendant's willful infringement of its works, described above, in an amount to be determined at trial, but in no event in an amount less than $198,000.00;

b).  For an award of actual attorney fees, court costs, taxable costs, and the cost associated with the retention, preparation and testimony of expert witnesses;

a).  For an order requiring Defendant to produce, for impounding during the pendency of this action and for destruction thereafter, all offending computers, drives, files and related materials containing illicit copies of Stellar's copyright protected recordings, which are in the possession, or under the control of the Defendant; and

b).  For such other relief as the Court determines to be just and equitable.

PLAINTIFF DEMANDS A TRIAL BY JURY.

Dated this 13th  day of June, 2018.

/s/ Douglas F. Hartman            .
Douglas F. Hartman
BBO# 642823

Hartman Law, P.C.
One Boston Place
201 Washington Street, 26th Floor
Boston, MA 02108

Tel: 617-807-0091
Fax : 617-507-8334
Email3dhartman@hartmanlawpc.com

and

/s/ Michael T. Hopkins            .
Michael T. Hopkins (LEAD COUNSEL)
appearing *pro hac vice*
WBN: 1014792
email: mth@ip-lit.us

IP-Litigation.US, LLC
757 N. Broadway, Suite 201
Milwaukee, WI  53202

Tel/Fax: (888) 227-1655

attorneys for Plaintiff